IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARRY C. NAGEL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:15-cv-01669- RCM |
| | ) | |
| v. | ) | |
| | ) | *Electronically Filed* |
| SIEMENS INDUSTRY, INC., SIEMENS | ) | |
| RAIL AUTOMATION CARBONE | ) | |
| SYSTEMS, INC., AND SIEMENS RAIL | ) | |
| AUTOMATION CORPORATION | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION
FOR LEAVE TO FILE AN AMENDED ANSWER TO COMPLAINT
AND AFFIRMATIVE AND ADDITIONAL DEFENSES**

Defendants Siemens Industry, Inc., Siemens Rail Automation Carbone Systems, Inc., and Siemens Rail Automation Corporation (collectively, "Defendants" or "Siemens"),[1] by and through their undersigned counsel, submit this Brief in Support of their Motion for Leave to File an Amended Answer to Plaintiff's Complaint and Affirmative and Additional Defenses to include the affirmative defense of after-acquired evidence.

**I.      RELEVANT PROCEDURAL HISTORY**

On or about November 17, 2015, Plaintiff filed a Complaint against Siemens in the Court of Common Pleas of Allegheny County, Pennsylvania.  Plaintiff's Complaint asserts claims for breach of contract and violation of the Pennsylvania Wage Payment and Collection Law ("WPCL").  Specifically, Plaintiff claims that he experienced an alleged material diminution of

---

[1]      Siemens Industry, Inc. ("SII") is the only proper defendant in this action, as both Siemens Rail Automation Carbone Systems, Inc. and Siemens Rail Automation Corporation ceased to exist as separate corporate entities following their merger with SII on April 1, 2014.

his job duties and responsibilities which constituted "Good Reason" for him to resign from Siemens, thereby entitling him to severance pay and health benefits per the terms of his Employment Agreement.  On December 17, 2015, Defendants removed the case to this Court. (Dkt. No. 1).   On December 23, 2015, Defendants timely filed their Answer to Plaintiff's Complaint and Affirmative and Additional Defenses. (Dkt. No. 3).

On February 2, 2016, the parties exchanged initial disclosures pursuant to Rule 26(a)(1). With respect to the "documents, electronically stored information, and tangible things" that Plaintiff had in his possession, custody, or control, Plaintiff disclosed:

> Copies of **all** documents that Mr. Nagel has in his possession, custody, or control which may be used to support his claims or defenses are Bates numbers HCN-0001 to HCN-0173 and included on the CD which is being provided herewith.

*See* Exhibit 1, Plaintiff's Initial Disclosures (emphasis added).

On February 29, 2016, Plaintiff propounded discovery upon Defendants.  Due to the complex nature of the electronically stored information ("ESI") in this case,[2] the parties agreed – at Siemens' suggestion – that discovery would "start with hard copy documents and, to the extent needed, production of relevant information from electronic data sources would begin with those that are most readily accessible and easy to search without significant cost."  *See* Fed. R. Civ. P. 26(f) Report of the Parties. (Dkt. No. 9).   On March 24, 2016, counsel for Siemens advised Plaintiff's counsel that there would be minimal hard copy documents responsive to Plaintiff's discovery requests and initiated discussions regarding ESI discovery.  *See* Exhibit 2, March 24, 2016, Email from Littler.  On March 28, 2016, counsel for the parties, along with their ESI consultants, met and conferred to further discuss the description, location, and accessibility of ESI. During this conference, and in a subsequent correspondence, Siemens provided Plaintiff

---

[2]      The legacy email data at issue in this case implicates the email systems of three different entities – PHW, Invensys, and Siemens.

with a significant amount of information concerning the location and accessibility of Siemens' ESI.  *See* Exhibit 3, April 1, 2016, Letter from Littler[3].  Counsel for Plaintiff disclosed that Plaintiff had one (1) personal computer, two (2) personal email accounts that he used for personal purposes, and three (3) flash drives containing unidentified "information" from PHW's, Invensys', and Siemens' computer systems (with the earliest document date being 1991). Plaintiff's counsel further disclosed that the "most recent date that ESI was transferred to our client's flash drive was on or about April 3, 2015" – **Plaintiff's last day of employment with Siemens**.   *See* Exhibit 4, March 29, 2016, Email from Vuono & Gray, LLC; Exhibit 3, April 1, 2016, Letter from Littler; (Compl. ¶ 26, Dkt. No. 1-3, P. 12).   Plaintiff did not provide any further description, by category, or otherwise, of the documents and/or information contained on the flash drives.

On May 18, 2016, the parties participated in a mediation per the Court's mandatory Alternative Dispute Resolution program; however, the case was not resolved. (Dkt. No. 16). Thereafter, Siemens renewed its eDiscovery efforts (in order to supplement its prior production of hard copy documents) and notified Plaintiff of the same via letter on July 12, 2016. *See* Exhibit 5, July 12, 2016, Letter from Littler. On July 22, 2016, Plaintiff's counsel, for the first time (in response to the July 12, 2016, letter from Siemens which also requested that Plaintiff provide Defendants with additional information related to Plaintiff's sources of ESI, preservation activities, and a supplementation of documents responsive to its discovery requests), informed Siemens that there was a .PST file on one of Plaintiff's flash drives **and** the .PST contained "over 30,000 emails for the applicable date range [*i.e.*, September 1, 2011, through May 31,

---

[3]      Because Exhibit 3, contains, inter alia, confidential business information relating to Siemens' computer systems, Defendants have simultaneously filed a Motion for Leave to File Exhibit Under Seal.

2015], including those converted to Siemens' Exchange server from the legacy PHW and Invensys systems." *See* Exhibit 6, July 22, 2016, Letter from Vuono & Gray, LLC.   In addition to these emails, Plaintiff's counsel disclosed that the flash drives also contained "documents from the Microsoft Office suite (.doc, .xls, .ppt, etc.)," and PDFs. *Id*. The parties have not yet exchanged and/or produced ESI; however, because Plaintiff has disclosed that the ESI currently in his and his counsel's possession was most recently transferred to his flash drives on or about April 3, 2015 (*see* Exhibit 4), it is clear that Plaintiff obtained the ESI in question and then transferred it to his flash drives **while employed by Siemens and in violation of Siemens' policies.** *See* Exhibits 11-13 and discussed, *infra*.

Because Plaintiff, in his role as General Manager of the PHW Business Unit, had access to Siemens' privileged, confidential, and/or proprietary information, and the *extraordinary* amount of electronic data/information taken by Plaintiff makes it highly likely that this information contains Defendants' privileged, confidential and/or proprietary information, Defendants requested that Plaintiff and his counsel **immediately** return the flash drives containing Siemens' property.  *See* Exhibit 7, August 1, 2016, Letter from Littler; Exhibit 8, Declaration of Attorney Brown (Brown Decl. ¶¶ 2-11).

To date, Plaintiff's counsel has refused to return the flash drives containing Siemens' property on grounds that the drives also contain their client's confidential "personal" information,[4] and Plaintiff's counsel would not agree to Siemens proposal that the parties retain a third party eDiscovery vendor with reliable forensic capabilities to insure the *status quo* forensic preservation of the information (including metadata) on the USB devices.  Accordingly,

---

[4]   Despite admitting that Plaintiff has taken over 30,000 emails, documents from the Microsoft Office suite (.doc, .xls, .ppt, etc.), and PDFs from Siemens' computer systems, Plaintiff's counsel has not explained what "personal" information may be on the flash drives that would entitle Plaintiff and his counsel to refuse to relinquish Siemens' property.

4

at this time, Siemens is unable to ascertain the exact nature and scope of Plaintiff's unauthorized access to and retention/use of its property.[5]

## II.    RELEVANT FACTUAL BACKGROUND

Prior to May 9, 2012, Plaintiff was one of two co-owners of PHW, Inc. ("PHW"), a Pennsylvania corporation engaged in the business of manufacturing electronic train control and signaling systems.  (Compl. ¶ 5.1, Dkt. No. 1-3, P. 7).  On or about May 9, 2012, Plaintiff sold PHW to Invensys Rail Corporation ("Invensys"), pursuant to a Stock Purchase Agreement ("SPA").  (Compl. ¶ 5.2, Dkt. No. 1-3, P. 7).   In connection with the SPA, Plaintiff negotiated and entered into an employment agreement with Invensys.  (Compl. ¶ 6,Dkt. No. 1-3, P. 7). Pursuant to Plaintiff's Employment Agreement, if his employment was terminated for "Cause," he would not be entitled to receive, among other things, severance pay, bonuses, benefits, or other compensation.  *See* Exhibit 9, Nagel's Employment Agreement, p. 2. (Dkt. No. 1-3, P. 84). Additionally, "Cause" was defined as "gross misconduct, unlawful conduct or use of Company Information or property, misappropriation of IRNA assets…[and] willful violation of Company written policies or procedures...." *Id.*

On or about May 2, 2013, Siemens acquired Invensys and its subsidiaries, including PHW.  (Compl. ¶ 5.3, Dkt. No. 1-3, P. 7).   After the acquisition, Plaintiff acknowledged that he received, reviewed, and accepted certain Siemens policies, including, but not limited to, Siemens' Recording Devices policy, Electronic Communication policy and Standards of

---

[5]     On August 9, 2016, Plaintiff's counsel further disclosed, for the first time, that Plaintiff had an "old, possibly nonfunctioning personal laptop at home that he used for work purposes" while employed by Siemens, **and** that he copied some of the contents of the flash drives to his personal Macbook that he uses on a daily basis in order to back up the files, should something happen to the flash drives.  Siemens requested that Plaintiff's counsel keep the MacBook and the laptop in a secure location outside of Plaintiff's further ability to access and delete or overwrite its contents (including metadata).  On August 11, 2016, Plaintiff's counsel informed Siemens that they had returned the MacBook to Plaintiff.  *See* Exhibit 8, Brown Decl.¶¶ 12-14.

Conduct policy. *See* Exhibit 10, Nagel's Policy Acknowledgment.   Additionally, Plaintiff acknowledged that any violation of Siemens' policies may lead to discipline, "up to and including termination." *Id*.

Significantly, Siemens' Recording Devices policy states that "[p]rivileged or confidential material, such as, but not limited to, proprietary information, trade secrets, or attorney-client communications, may not be photocopied, scanned, photographed, or otherwise copied except by authorized personnel in the furtherance of company business."   *See* Exhibit 11, Recording Devices policy, p. 2.  Siemens' Electronic Communication policy also provides that "all internet data that is composed, transmitted, or received via our computer communications systems is considered to be part of the official records of the Company…," and prohibits:

- Sending confidential or trade secret materials to unauthorized personnel or to third parties outside of the Company; and

- Publishing, transmitting, downloading or posting the Company or third party information or intellectual property in violation of the Company's or a third party's intellectual property rights.

*See* Exhibit 12, Siemens' Electronic Communications Policy, pp. 2-5.   Further, Siemens' Standards of Conduct policy expressly identifies the following conduct as being "extremely serious violations" which may result in immediate discharge:

- misuse of Company Property;

- diverting,    receiving,    or    possessing    fraudulently,    without authorization…other property of the Company;

- failure to protect proprietary Company information and/or technology, or reproduction of the same, without proper authority; and

- Unauthorized access, misuse, or other security violations of Company-owned or leases computer systems or software....

*See* Exhibit 13, Siemens' Standards of Conduct, p. 1-3.

6

## III.   LEGAL STANDARD

### A.   Amendment of Pleadings Under Fed. R. Civ. P. 15(a)

Under Federal Rule of Civil Procedure 15(a), a defendant may amend its answer to the complaint "by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  The Supreme Court's interpretation of Rule 15(a) clarifies how freely leave to amend should be given:

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. . . . In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'  Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) ("We have noted that the courts have shown a strong liberality in allowing amendments under Rule 15(a).") (quotation and citation omitted); *Nesselrotte v. Allegheny Energy, Inc.,* Civ. No. 06-01390, 2007 WL 3147038, at *2 (W.D. Pa. Oct. 25, 2007) (Fischer, J.).

Applying the Supreme Court's standard, The Third Circuit has emphasized that Rule 15(a):

> embodies the liberal pleading philosophy of the federal rules . . . . This liberal amendment philosophy limits the district court's discretion to deny leave to amend.  The district court may deny leave to amend only if a [party's] delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party.

*Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir. 1984), *cert. denied*, 469 U.S. 1122 (1985).  The Third Circuit further explained that, "prejudice to the non-moving party is the touchstone for the denial of an amendment."  *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993).  "[T]he non-

moving party must do more than merely claim prejudice; it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered. . . ." *Bechtel*, 886 F.2d at 652; *see also Nesselrote* 2007 WL 3147038, at *2 ("[u]nless the opposing party will be prejudiced, leave to amend should generally be allowed") (quotation and citation omitted).  Where the non-moving party cannot show substantial or undue prejudice, denial of an amendment "must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz*, 1 F.3d at 1414.

### B.    After-Acquired Evidence Doctrine

The after-acquired evidence doctrine is generally recognized in the employment discrimination context; however, federal courts in Pennsylvania have held that the after-acquired evidence doctrine also applies in the breach of contract context and "may affect the status of an employee's termination." *Danois v. i3 Archive Inc*., No. CIV.A. 11-3856, 2013 WL 3556083, at *18-19 (E.D. Pa. July 12, 2013). *See also Dobinsky v. Crompton & Knowles Colors Inc*., Civ. No. 3:02-1291, 2004 WL 2303686, at *5 (M.D. Pa. Mar. 30, 2004).   Specifically, these courts have held that "if an employer can demonstrate that it would have fired an employee, had it known of prior misconduct, then the employee's claim for breach of contract is barred, or put differently, the prior misconduct excuses the employer's breach." *Id*.  *See also, Dobinsky*, Civ. No. 3:02-1291, 2004 WL 2303686, at *5 (citing *O'Day v. McDonnell Douglas Helicopter Co.,* 959 P.2d 792, 795 (Az. 1998) ("after-acquired evidence of employee misconduct is a defense to a breach of contract action for wages and benefits lost as a result of discharge if the employer can demonstrate that it would have fired the employee had it known of the misconduct"). This result is in accord with the general principle that "a party who has materially breached a contract may not complain if the other party refuses to perform his obligations under the contract.  A party

may not insist upon performance of the contract when he himself is guilty of a material breach of the contract." *Dobinsky*, Civ. No. 3:02-1291, 2004 WL 2303686, at *5-6 (citing *Ott v. Buehler Lumber Co.,* 541 A.2d 1143, 1145 (Pa. Super. Ct. 1988).

## IV.   ARGUMENT

Rule 15(a) enables a party to assert matter that was unknown at the time the original answer was filed.  *See* 6 Wright, Miller & Kane, Federal Practice And Procedure § 1473 (3d ed. 2015).   Accordingly, Siemens' request for leave to  amend its Answer and Affirmative and Additional Defenses to include the affirmative defense of after-acquired evidence should be granted.  Siemens only recently discovered that Plaintiff – without authorization and in direct violation of Siemens' policies — downloaded and took over 30,000 emails as well as documents from the Company's Microsoft Office suite (.doc, .xls, .ppt, etc.) and PDFs, from Siemens.

Siemens' proposed amendment is logically related to Plaintiff's claims and Siemens' defenses in this case. Because Siemens did not have knowledge that Plaintiff – during his employment – improperly accessed, transferred and retained its property at the time that it filed its original Answer and Affirmative and Additional Defenses, it could not have known to assert the affirmative defense of after-acquired evidence.  Plaintiff, on the other hand, was well aware that he had downloaded and retained Siemens' property without authorization and, therefore, he cannot claim that he is prejudiced by Siemens' amendment.

Moreover, Siemens' amendment is not based on bad faith or dilatory tactics.  Siemens seeks to amend its Answer only three weeks after learning that, during the course of his employment, Plaintiff may have engaged in serious misconduct in violation of Company policy which would have provided grounds for immediate termination.  *See Nesselrote*, Civ. No. 06-01390, 2007 WL 3147038, at *4 (holding that four-month gap between the time that the

Defendants learned of Plaintiff's conduct establishing the basis for their affirmative defense  and the filing of the motion to amend was *de minimis*).

In short, the facts necessitating Defendants' newly proposed affirmative defense stem solely from Plaintiff's now disclosed extensive and unauthorized conduct of copying, removing, and retaining Siemens' property – the full scope of which remains to be discovered by Siemens. In this regard, discovery is ongoing and Plaintiff has not yet returned to Siemens the property he downloaded and removed from Siemens' computer systems.  Further, the deposition of Plaintiff, has yet to take place and the deadline for discovery will not run until September 30, 2016.[6] Accordingly, there remains sufficient time for the parties to engage in discovery regarding Defendants' proposed after-acquired evidence affirmative defense.  Therefore, the amendment will not unduly delay this litigation or unfairly disadvantage Plaintiff in any way.

## V.    CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant them leave to amend their Answer and Affirmative and Additional Defenses to include the affirmative defense of after-acquired evidence.

---

[6]    The deposition of Plaintiff is scheduled for August 26, 2016.

Respectfully submitted,


*/s/ Allison R. Brown*

Robert W. Cameron (Pa. ID No. 69059)
bcameron@littler.com
Allison R. Brown  (PA ID No. 309669)
arbrown@littler.com
LITTLER MENDELSON, P.C.
625 Liberty Avenue, 26th Floor
Pittsburgh, PA  15222
Telephone: (412) 201-7635/7678
*Facsimile*: (412) 456-2377/ 412.774.2068

*Attorneys for Defendants*

Dated: August 15, 2016

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 15th day of August 2016, the foregoing document was filed using the Western District of Pennsylvania's ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon the following counsel of record:

Mark T. Vuono
mvuono@vuonogray.com
Dennis J. Kusturiss
dkursturiss@vuonogray.com
Erica G. Wilson
ewilson@vuonogray.com
VUONO & GRAY, LLC
310 Grant Street, Suite 2310
Pittsburgh, PA 15219

*s/Allison R. Brown*
Allison R. Brown